UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

MARIA LYNN KWIATKOWSKI,

          Plaintiff,

v.                                      Case No:  6:11-cv-570-Orl-GJK

COMMISSIONER OF SOCIAL
SECURITY,

          Defendant.

## MEMORANDUM OF DECISION

Maria Lynn Kwiatkowski (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for benefits (hereafter "Application"). Doc. No. 1. Claimant raises three issues on appeal. First, Claimant argues that the Administrative Law Judge (hereafter "ALJ") failed to state the weight given to two non-examining state consultant's mental Residual Functional Capacity (hereafter "RFC") opinions, and failed to include the limitations included in these opinions in the hypothetical given to the vocational expert. Doc. No. 17 at 10-14. Second, Claimant argues that the ALJ failed to include all of her limitations when making his RFC finding. Doc. No. 17 at 14-19. Third, Claimant argues that the ALJ failed to consider and make any findings regarding the side effects of her medications. Doc. No. 17 at 19-22. For the reasons set forth below the Commissioner's decision is **REVERSED and REMANDED**.

I.       BACKGROUND

On February 22, 2007, Claimant filed her Application seeking benefits under Titles II and VI of the Social Security Act. R. 189-91. In her Application, Claimant alleged a disability onset

date of June 2, 2002. R. 189. Claimant's Application was denied initially and on reconsideration. R. 72-75. Claimant requested a hearing before an ALJ and the hearing was conducted on October 7, 2009. R. 42, 98. Claimant, her sister and a vocational expert testified at the hearing. R. 42-71. On November 18, 2009, the ALJ issued his decision, denying Claimant's Application and finding her not disabled. R. 15-34.

## II.   MEDICAL AND OPINION EVIDENCE

The medical record contains RFC assessments from one examining state consultant and four non-examining state consultants. R. 337-44, 349-51, 353-65, 374-84, 386-88, 391-94, 399-406. The examining state consultant provided an opinion regarding Claimant's physical functional abilities. R. 391-94. Two of the non-examining state consultants offered physical RFC assessments. R. 337-44, 399-406. Two of the non-examining state consultants submitted Psychiatric Review Techniques (hereafter "PRT") and offered mental RFC assessments. R. 349-51, 353-65, 372-84, 386-88.

### A.  Alvan Barber, M.D. – Examining State Consultant RFC Opinion

On January 23, 2008, Dr. Barber examined Claimant on behalf of the Commissioner. R. 391-94. Dr. Barber noted that Claimant stated she cannot work because of her panic disorder. R. 391. Dr. Barber noted that Claimant related diagnoses of agoraphobia, depression, post-traumatic stress disorder, obsessive compulsive disorder and mitral valve prolapse. R. 391. Dr. Barber noted that Claimant stated she can lift ten to twenty pounds, and has no problems walking, standing or sitting. R. 391. Dr. Barber noted that Claimant was prescribed Metoprolol and Xanax. R. 391.

Dr. Barber's physical examination was essentially normal in regard to Claimant's speech, neck, chest, lungs, heart, abdomen, extremities, back, gait and station. R. 393. Dr. Barber

indicated that Claimant's cranial nerves II through XII were grossly intact with normal function and that her sensory perception in regard to pain, light touch, temperature, vibration and proprioception were intact and normal. R. 393. Dr. Barber also indicated that Claimant's fine and gross motor skills were intact. R. 393. In his mental examination, Dr. Barber indicated that Claimant did not have a memory deficit, her affect appeared normal, her cognitive functioning was adequate and there was no evidence of depression. R. 394.

Dr. Barber indicated that Claimant has a history of agoraphobia, anxiety disorder, obsessive compulsive disorder, post-traumatic stress disorder, dysthymia and mitral valve prolapse which were being treated. R. 394. In regard to Claimant's functional abilities, Dr. Barber indicated that Claimant "could be capable of walking, standing and sitting for reasonable periods of time without complaints of body pain. Claimant could be capable of kneeling, crawling and squatting. Claimant has no other postural or manipulative limitations. Claimant drove herself to the examination room." R. 394.

**B.  Physical RFC Assessments From Non-Examining State Consultants**

On May 1, 2007, and February 12, 2008, respectively, Donald Morford, M.D., and John Long, M.D., offered physical RFC assessments. R. 337-44, 399-406. Drs. Morford and Long's physical RFC opinions are practically identical. Both doctors opined that Claimant can lift twenty pounds occasionally and ten pounds frequently. R. 338, 400. Both doctors opined that Claimant can stand, walk and/or sit about six hours in an eight-hour workday. R. 338, 400. Both doctors opined that Claimant is unlimited in her ability to lift and/or carry. R. 338, 400. Both doctors opined that Claimant should never climb ladders, ropes or scaffolds. R. 339, 401. Both doctors opined that Claimant can occasionally balance, stoop, kneel, crouch, crawl and climb ramps or stairs. R. 339, 401. Both doctors opined that Claimant has no manipulative, visual or

communicative limitations.  R. 340-41, 402-03.  Both doctors opined that Claimant should avoid concentrated exposure to extreme cold and heat, but otherwise could have unlimited exposure to wetness, humidity, noise vibration, fumes, odors dusts or gases.  R. 341, 403.  The only difference between Dr. Morford and Long's physical RFC assessments is that Dr. Morford opined that Claimant should avoid even moderate exposure to hazards, whereas Dr. Long opined that Claimant should avoid concentrated exposure to hazards.  R. 341, 403.

### C. Mental RFC Assessments From Non-Examining State Consultants

On May 22, 2007, Val Bee, Psy.D., completed a PRT and rendered her mental RFC assessment.  R. 349-51, 353-65.  In her PRT, Dr. Bee opined that Claimant suffers from dysthymia, sleep disturbance, feelings of guilt or worthlessness, and recurrent severe panic attacks occurring at least once per week on average.  R. 358.  Dr. Bee opined that Claimant is moderately restricted in performing activities of daily living and has moderate difficulties in maintaining concentration, persistence or pace.  R. 363.  Dr. Bee opined the Claimant has mild difficulties in maintaining social functioning and has had no episodes of decompensation of extended duration.  R. 363.

In her mental RFC assessment, Dr. Bee opined that Claimant was moderately limited in her ability to perform activities within a schedule, maintain regular attendance and to be punctual within customary tolerances.  R. 349.  Dr. Bee opined that Claimant was moderately limited in her ability to complete a normal workday and workweek without interruptions from her psychologically based symptoms, and perform at a consistent pace without rest periods that are unreasonable in number and length.  R. 350.  Dr. Bee also opined that Claimant was moderately limited in her ability to travel in unfamiliar places, use public transportation, set realistic goals or make plans independently of others.  R. 350.  Otherwise, Dr. Bee opined that there was no

evidence of limitation or Claimant had no significant limitations in the areas of understanding and memory; sustained concentration and persistence; social interaction and adaptation. R. 349-50.

In explaining her RFC assessment, Dr. Bee stated that "Claimant appears to retain an adequate capacity for understanding, memory and concentration. Her depression and anxiety symptoms may cause occasional lapses in reliability and productivity." R. 351. Dr. Bee stated that Claimant appears to be "most comfortable functioning in relative isolation from others," but is able to relate and act appropriately in public for shopping purposes. R. 351. Dr. Bee stated that Claimant "may need some support with adaptive skills such as public transportation and setting goals." R. 351.

On January 10, 2008, Alan Harris, Ph.D., completed a PRT and rendered his mental RFC assessment. R. 372-88. In his PRT, Dr. Harris opined that Claimant suffers from dysthymia, recurrent severe panic attacks occurring at least once per week on average and possibly obsessive compulsive disorder. R. 375, 377. Dr. Harris opined that Claimant is moderately limited in her ability to maintain concentration, persistence or pace. R. 382. Dr. Harris opined that Claimant is mildly restricted in performing her activities of daily living and has mild difficulties in maintaining social functioning. R. 382. Dr. Harris opined that Claimant has had no episodes of decompensation of extended duration. R. 382.

In his mental RFC assessment, Dr. Harris opined that Claimant is moderately limited in her ability to maintain attention and concentration for extended periods of time, as well as perform activities within a schedule, maintain regular attendance and to be punctual within customary tolerances. R. 386. Dr. Harris opined that Claimant is moderately limited in her ability to complete a normal workday and workweek without interruptions from her

psychologically based symptoms, and perform at a consistent pace without rest periods that are unreasonable in number and length. R. 387. Dr. Harris opined that Claimant is moderately limited in her ability to maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, and respond appropriately to changes in the work setting. R. 387. Otherwise, Dr. Harris opined that Claimant was not significantly limited in the areas of understanding and memory, sustained concentration and persistence, social interaction and adaptation. R. 386-87.

In explaining his RFC opinion, Dr. Harris indicated that Claimant has panic attacks, but her diagnosis of obsessive compulsive disorder is not confirmed by the documentation. R. 388. Dr. Harris indicated that when Claimant has her panic attacks, she would have difficulty maintaining concentration, persistence or pace for an extended time or for complex tasks. R. 388. Dr. Harris indicated that other times Claimant's cognitive functioning is within normal limits in light of her activities of daily living. R. 388. Dr. Harris indicated that Claimant does not get out of bed sometimes and would be at risk for missing work. R. 388. Dr. Harris indicated that Claimant has no difficulties interpreting others, despite having friction with her family and being withdrawn. R. 388. Dr. Harris indicated that Claimant sometimes goes several days without bathing and could become overwhelmed and stressed by change, particularly if it is sudden. R. 388. Dr. Harris indicated that given time, Claimant should be able to plan effectively. R. 388.

### III.     ADMINISTRATIVE PROCEEDINGS

On October 7, 2009, the ALJ conducted a hearing on Claimant's Application. R. 42-71. Claimant testified that she is 41 years old, graduated from high school and has three children. R. 43-44. Claimant testified that she worked as a bartender and cleaned houses and condominiums.

R. 45.[1] Claimant testified that after her son was born she started having panic attacks, became unable to go far from home and sometimes bursts into tears for no reason. R. 45-46.

Claimant testified that Dr. Fernandez treats her for panic disorder, obsessive compulsive disorder and dysthymic disorder. R. 46. Claimant testified that she is obsessive compulsive about cleaning and items must be in even numbers. R. 46-47. Claimant testified that she has panic attacks four times per week on average and they start to go away within an hour of taking her medication. R. 47. Claimant testified that her panic attacks cause trembling, a choking feeling, numbness on the right side of her body and makes her feel like she might die. R. 47-48. Claimant testified that she does not fear leaving her house, but gets panic attacks if she leaves a certain area. R. 48.

Claimant testified that she is depressed, cries a lot, but has no problem sleeping. R. 49. Claimant testified that she is prescribed Valium and Xanax for her panic attacks. R. 56-58.[2] Claimant testified that she takes Toprol XL for her supraventricular tachycardia and mitral valve prolapse. R. 50-51, 56. Claimant testified that she is not prescribed medication for her obsessive compulsive disorder because it would interfere with the Toprol. R. 49-50. Claimant testified that she has been told she has post-traumatic stress disorder, but has never been treated for it. R. 52-53.

Claimant testified that she gets short of breath walking to the refrigerator and sometimes getting out of bed to go to the bathroom. R. 52. Claimant testified that she has not driven for three years due to her panic attacks. R. 52. Claimant testified that she prefers to be alone, does

---

[1] Claimant also submitted a work history report where she listed her prior jobs as bartender, dashboard cutter, factory worker in a shoe factory, general laborer in a dry cleaning business and a sales representative for golf supplies. R. 224.

[2] Claimant testified that she only takes the Xanax when she has a panic attack, rather than once a day as prescribed by Dr. Thomas, because Dr. Fernandez told her not to take it and she is afraid she might become addicted. R. 56. She testified that Dr. Fernandez tells her not to take Xanax and prescribed her Valium. R. 57. Later, Claimant testified that she is prescribed Valium for her panic attacks and does not take the Xanax. R. 57-58.

not belong to any social organizations and does not care for her personal hygiene every day. R. 53-54. Claimant testified that the only physical problem she has is with her heart. R. 54. Claimant testified that she has no problems sitting or standing, but lifting makes her breathe heavy. R. 54. Claimant testified that she can walk a short distance before needing to stop and catch her breath. R. 54.

The vocational expert testified that Claimant's past work was classified as medium or light unskilled or semiskilled work. R. 66. The ALJ asked the vocational expert whether a person of Claimant's age, work background and education could perform Claimant's past work given the following restrictions: can sit up to eight hours; can stand or walk up to six hours; can lift twenty pounds occasionally and ten pounds frequently; can never climb ladders, ropes or scaffolds; cannot work around unprotected heights, moving or hazardous machines, or drive motorized vehicles; can occasionally bend, stoop, crawl, crouch, kneel or climb ladders; is limited to work that is low to moderate stress; and contact with the public or coworkers is brief and superficial. R. 66-67. The vocational expert testified that Claimant could perform her past work as a laundry sorter, as generally performed and performed by her, and dashboard cutter, as she performed it. R. 67-68. The vocational expert testified that the Dictionary of Occupational Titles does not address stress level and that a new employee would be allowed one absence per month. R. 70.

On November 18, 2009, the ALJ issued his decision denying Claimant's Application. R. 15-34. The ALJ found that Claimant suffers from the severe impairments of paroxysmal supraventricular tachycardia, mitral valve prolapse, pulmonary venous congestion, pericardial effusion, heart palpitations, anxiety disorder, depression and obsessive compulsive disorder. R. 20. The ALJ found that Claimant has a mild restriction in performing activities of daily living,

moderate difficulties in social functioning and moderate difficulties in maintaining concentration, persistence or pace.  R. 21-22.

The ALJ found that Claimant retains the RFC to perform light work with the following limitations:  can sit up to eight hours and stand or walk up to six hours per day; can lift twenty pounds occasionally and ten pounds frequently; can occasionally bend, stoop, crouch, kneel, crawl and climb stairs; should not climb ladders, ropes or scaffolds; should not work around unprotected heights, moving or hazardous machinery or drive motorized vehicles; and should perform work that is low to moderate stress with only brief contact with co-workers and the public.  R. 23-24.

In weighing the medical opinions of record, the ALJ adopted Dr. Long's RFC assessment "because it accurately takes into account [Claimant's] emotional and physical symptoms and is supported by the overall record of evidence."  R. 30.  In regard to Claimant's "alleged psychological problems," the ALJ gave significant weight to Dr. Barber's opinion "because it is consistent with the medical evidence of record.  Furthermore, Dr. Barber is an examining, acceptable, medical source whose opinion is supported by the [C]laimant's own reports of being capable of doing light exertion work tasks and consistent with the findings on her physical and mental status examination."  R. 30-31.  The ALJ found that Dr. Barber's RFC "assessment is accurate in terms of the [C]laimant's abilities and supports the residual functional capacity delineated above."  R. 31.  After making his RFC finding, the ALJ determined that Claimant can perform her past relevant work as a dashboard cutter and laundry sorter, relying on the vocational expert's testimony.  R. 32-33.

## IV. LEGAL STANDARDS

### A. THE ALJ'S FIVE-STEP DISABILITY ANALYSIS

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. See 20 C.F.R. §§ 404.1520(a), 416.920(a). In *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. (citations omitted). The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

### B. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied). The District Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).

### C. REMEDIES

Congress has empowered the District Court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405(g)(Sentence Four). To remand under sentence four, the District Court must either find that the Commissioner's decision applied the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)); *Jackson v. Chater*, 99 F.3d 1086,

1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for District Court to find claimant disabled).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984). A claimant may also be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982). The District Court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C. § 405(g); or under both sentences. *Jackson*, 99 F.3d at 1089-92, 1095, 1098. Where the District Court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work).[3]

---

[3] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation). After a sentence-four remand, the District Court enters a final and appealable judgment immediately, and then loses jurisdiction. *Jackson*, 99 F.3d at 1089, 1095.

**V.     ANALYSIS**

The Court finds Claimant's first argument is dispositive: the ALJ's failure to state the weight given and reasons therefor to Drs. Bee and Harris' mental RFC opinions. Doc. No. 17 at 13-14. As a result, the Court does not address Claimant's other two arguments.

Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of steps four and five of the ALJ's sequential evaluation process for determining disability. In *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1178-79 (11th Cir. Jan. 24, 2011), the Eleventh Circuit held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. *Id*. (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). The Eleventh Circuit stated that "'[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Winschel*, 631 F.3d at 1178-79 (quoting *Cowart v. Schwieker*, 662 F.2d 731, 735 (11th Cir. 1981) (emphasis added)). *See also MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (failure to state with particularity the weight given to opinions and the reasons therefor constitutes reversible error).

It is undisputed that the ALJ did not state the weight he gave to Drs. Bee and Harris' mental RFC opinions.[4] The Commissioner argues that this is not reversible error because "while

---

[4] The ALJ also did not mention Jeff Oatley's, Ph.D., clinical psychologist, consultative examining opinion. R. 346-48. Dr. Oatley's examination revealed that Claimant's mood was appropriate, her range of emotions was normal, she did not have any concentration, memory or orientation deficits, and she had an appropriate attention span and activity level. R. 347-48. Dr. Oatley diagnosed Claimant with super ventricular tachycardia, panic disorder without

not stating the specific weight given to Dr. Bee and Dr. Harris' reports, the ALJ clearly considered and relied on such reports in evaluating Plaintiff's mental impairments." Doc. No. 18 at 11. The ALJ referenced Drs. Bee and Harris' PRTs and mental RFC assessments in determining that Claimant's impairments or combination of impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 20-21, 23. Merely referencing Drs. Bee and Harris' PRTs and mental RFC assessments does not comport with *Winschel*.

When a physician offers an opinion concerning the nature and severity of a claimant's impairments, what the claimant can still do despite her impairments and the claimant's mental restrictions, *Winschel* unequivocally requires the ALJ to state with the weight given to the opinion, with particularity, and the reasons therefor. 631 F.3d at 1178-79. Absent such a statement, "'it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Id.* (emphasis added).

In the case at bar, the ALJ found that Claimant suffered from the severe mental impairments of anxiety disorder, depression and obsessive compulsive disorder. R. 20. Drs. Bee and Harris are the only doctors who provided opinions on Claimant's RFC vis a vis her severe mental impairments. Dr. Harris opined that Claimant would have difficulty maintaining concentration, persistence or pace for extended or complex tasks when she has a panic attack. R. 388. Dr. Harris opined that Claimant's functioning varies and that because some days she does not get out of bed that she would "be at risk for missing work." R. 388. Dr. Bee opined that Claimant "depression and anxiety symptoms may cause occasional lapses in reliability and productivity." R. 351. Because the ALJ undisputedly did not state the weight given to Drs. Bee

---

agoraphobia and dysthymic disorder. R. 348. Dr. Oatley indicated that Claimant had a fair prognosis, could manage her finances, can perform all household chores, has no friends and has no difficulty with concentration or task persistence when performing routine household chores. R. 348.

and Harris' opinions, as set forth in their PRTs and mental RFC assessments, the Court is unable to determine whether the ALJ's decision is "'rational and supported by substantial evidence.'" *Id.*

The Court acknowledges that the ALJ gave significant weight to Dr. Barber's findings and opinions as they related to Claimant's "alleged psychological problems." R. 30. Although Dr. Barber provided findings in regard to Claimant's "mental status," Dr. Barber's opinion regarding Claimant's RFC was limited to her physical limitations. R. 394. Thus, Dr. Barber did not provide an RFC assessment concerning the nature and severity of Claimant's mental limitations or what Claimant can do in spite of her mental limitations. Consequently, substantial evidence does not support the ALJ's decision to rely on Dr. Barber's opinion to account for Claimant's mental limitations.

The ALJ also adopted Dr. Long's physical RFC assessment "because it accurately takes into account [Claimant's] emotional and physical symptoms and is supported by the overall record of evidence." R. 30. Other than stating that Claimant's symptoms are "attributable to MDI, emotional/psychological component," Dr. Long's physical RFC assessment does not explain how he accounted for Claimant's mental impairments. In light of the fact that Dr. Long only offered a physical RFC assessment, it is unclear whether Dr. Long considered or accounted for any of Claimant's mental impairments. Consequently, the ALJ's reliance on Dr. Long's physical RFC assessment to account for Claimant's emotional or psychological impairments is likewise unsupported by substantial evidence.

## VI. CONCLUSION

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **REVERSED and REMANDED**, pursuant to sentence four of Section 405(g); and

2. The Clerk is directed to enter judgment in favor of Claimant and close the case.

**DONE and ORDERED** in Orlando, Florida on August 17, 2012.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

Richard A. Culbertson
Suite E
3200 Corrine Dr
Orlando, FL 32803

John F. Rudy, III
Suite 3200
400 N Tampa St
Tampa, FL 33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
John C. Stoner, Branch Chief
Andrew S. Feldman, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia 30303-8920

The Honorable William H. Greer
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building #400
8880 Freedom Crossing
Jacksonville, FL 32256-1224